# In the United States Court of Federal Claims

No. 14-633C
March 9, 2015

* * * * * * * * * * * *

MICHAEL ANTHONY NORTON,

    Plaintiff,

v.

UNITED STATES,

    Defendant.

* * * * * * * * * * * *

Pro Se Plaintiff; In Forma Pauperis Application; Motion to Dismiss; Lack of Subject Matter Jurisdiction; Failure to State a Claim; Intellectual Property.

Michael Anthony Norton, Reston, VA, pro se.

Craig A. Newell, Jr., Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for the defendant. With him were John Fargo, Director, Civil Division, Department of Justice, and Joyce R. Branda, Acting Assistant Attorney General, Civil Division, Department of Justice.

## ORDER

**HORN, J.**

### FINDINGS OF FACT

Pro se plaintiff,[1] Michael Anthony Norton, filed a complaint in the United States Court of Federal Claims, "set[ting] forth a demand for judgment against the United States in the sum of $398,306.00 USD" for violations of his alleged trademarks, registered copyrights and a patent application[2] by various private entities. Mr. Norton

---

[1] Plaintiff's complaint notes that "[t]he Plaintiff has sought legal assistance in California, Ohio, Massachusetts, New York, Virginia and United Kingdom . . . to resolve such to no avail."

[2] Mr. Norton attached a copy of his patent application filed with the United States Patent and Trademark Office (USPTO) to his complaint. According to the application, the status of his patent application is "Abandoned -- Failure to Respond to an Office Action." The USPTO defines an abandoned application as an "application [that] is no longer pending and, thus, cannot mature into registration." The United States Patent and Trademark Office, Trademark Basics: Abandoned Applications, http://www.uspto.gov/trademarks/basics/abandon.jsp (last visited Mar. 9, 2015). See 37 C.F.R. 1.135 (1997) – Abandonment for failure to reply within time period.

demands judgment against the United States, because a private entity, World Capital Market, Inc., (WCM) allegedly stole his business identity and because the State of California lost his identity and denied him unemployment insurance benefits. Although Mr. Norton's complaint identifies the United States as the defendant, Mr. Norton does not specifically claim that the United States violated any of his copyrights, trademarks, patents, or any other rights to which he is legally entitled. Nonetheless, it appears that Mr. Norton blames the United States and its "[f]ragmented jurisdictional entities" for "allowing this to happen," despite that his allegations are for actions allegedly taken by private entities and the State of California.

Among his multiple allegations, Mr. Norton claims that two of his alleged copyrighted works, "Feminica" and "A Line in the Sand,"[3] were adapted, without his authorization, "from 2012-present in the form of a television show titled 'Veep' and registered with the U.S. Copyright Office in 2011 by Armando Iannucci and HBO, Inc." Plaintiff states he registered these works with the United States Copyright Office in 2003 and 2002, respectively.

Plaintiff also claims that for an "App," he "filed an application for patent protection with the USPTO in January, 2006," and that "[i]n 2013, the Plaintiff discovered 3 claims of the App had been implemented in Ohio by TeamNEO, Inc[.], who hired Atlas Advertising, Inc. of Colorado to do such partial implementation [of the App] in 2010 after the Plaintiff's App was rejected by USPTO." Plaintiff alleges that "TeamNEO, Inc. receives its funding from two prior entities which [Mr. Norton] previously approached while seeking to implement the App: JumpStart, Inc. and the Ohio Development Office."

Further, Mr. Norton claims that in 2008, a law firm, Polsinelli Law, filed "for protection of a Trademark (words and logo) titled 'Odysseus', which the Plaintiff had used as early as 2007 to promote the implementation of the App." Plaintiff claims his discovery of Polsinelli Law's trademark filing is pertinent "as both the App and the Polsinelli action fall within the same business sector of computer software and emergency management services."

In addition, plaintiff seeks damages against the United States for alleged wrongdoing by WCM and the State of California. Plaintiff claims that in order to promote his business, in 2013, he entered into a joint venture agreement with WCM, "who promised an initial capital contribution of $50,000." According to Mr. Norton, in June 2013, after the agreement was signed, WCM "register[ed] a C-corp. in California titled 'Odysseus, Inc.'" but, "the joint venture agreement was abridged, and no subsequent contribution occurred." As a result, Mr. Norton claims that WCM stole his business identity. Mr. Norton also claims he reported a "business identity theft" to the Secretary of State of California in July 2013, "after which the State reported to the Plaintiff that *his*

---

[3] The United States Copyright Office's records reflect that Mr. Norton obtained a copyright for "A Line in the Sand" in 2001, but does not reflect that Mr. Norton obtained a copyright for "Feminica."

2

identity was lost with them and denied him Unemployment Insurance benefits awarded the previously [sic] month." (emphasis in original).

Finally, plaintiff also seeks redress because he claims that from June 2013–14, as a result of the above, his "individual credit score plummeted 200 points from near-700 to 495, while all other mentioned parties profited from Plaintiff's work, [he suffered] an unusual 'tax allowance' burden."[4]

Plaintiff seeks damages in the amount of $398,306.00: (1) $40,270.00 for TeamNEO hiring Atlas Advertising to partially implement plaintiff's App; (2) $300,000.00 for "HBO, Inc. partially implement[ing] Plaintiff's Copyrighted work;"[5] (3) $50,000.00 for "WCM steal[ing] Plaintiff's business identity;" (4) $8,036.00 for the amount of undistributed Unemployment Insurance because the State of California lost plaintiff's identity; and (5) an "*undetermined*" amount due to "[f]ragmented jurisdictional entities allowing this to happen." (emphasis in original).

According to Mr. Norton, the United States Court of Federal Claims has jurisdiction over his complaint because "[t]he work of the Plaintiff has protections recorded in the U.S. Copyright Office and Patent & Trademark Office, and the nature of the work has many crossovers with regard to state and international jurisdictions. However, the majority of such remains in the United States."

Defendant responded to plaintiff's complaint by filing a motion to dismiss for lack of jurisdiction and for failure to state a claim pursuant to Rule 12(b)(1) (2014) and Rule 12(b)(6) of the Rules of the U.S. Court of Federal Claims (RCFC). Specifically, defendant argues that "Norton's claim of copyright infringement should be dismissed for lack of jurisdiction because this Court's jurisdiction is limited to claims of direct infringement by or for the United States, and not by private parties." Defendant also argues that "Norton's claim of patent infringement should be dismissed for lack of jurisdiction because Norton abandoned his application before the PTO and was thus never issued a patent." Further defendant states, "Norton's claim of trademark infringement should be dismissed for lack of jurisdiction because the Lanham Act places jurisdiction for trademark claims against the United States in the federal district and territorial courts." Defendant also argues that "[t]o the extent that Norton seeks relief from the United States for the actions of the State of California or any other State or foreign country, this Court lacks jurisdiction under the Tucker Act to address such claims" Therefore, the government requests the "[c]omplaint be dismissed for lack of

---

[4] Plaintiff does not elaborate on the "unusual" tax allowance burden.

[5] Plaintiff indicates he calculated the $300,000.00 based on the U.S. Copyright Office's 2013 report "that the average amount awarded for willfully infringed copyright is $150,000 per willfully infringed work . . . ."

3

jurisdiction or, in the alternative, for failure to state a claim upon which relief can be granted."[6]

Plaintiff did not respond to the arguments raised in the defendant's motion to dismiss, instead he filed a one page document titled, "Motion for Judgment on the Pleadings," in which he urges an early trial and for judgment on the pleadings. He also "represents 'the factual contentions have evidentiary support' and have been 'specifically, so identified' and 'have evidentiary support after a reasonable opportunity.'" Plaintiff states:

> Per RCFC 9I [sic], Plaintiff has "describe[d] the patent . . . alleged to be infringed". The application for patent presented in the Complaint is just that: a patent example of economy, ingenuity, communications, and novelty. The Court has sufficient interconnectedness among the Rule of Law and existing agencies to determine, via record of the United States Patent & Trademark Office from 2006, Plaintiffs pre- examination and examination phase attempts at communication with Central Intelligence Agency on the patentable art (which in marriage or merger qualifies this Court as good as any with regard to jurisdiction over the unprecedented art), via record of the United States Copyright Office from 1998 with regard to willfully infringed Copyrighted work in the Complaint via record of the Federal Bureau of Investigation from 2013 and Secretary of State of California from 2012 with regard to the business of Odysseus, Odysseus being the commercial activity represented by the Plaintiff and application for patent.

## DISCUSSION

When determining whether a complaint filed by a pro se plaintiff is sufficient to invoke review by a court, pro se plaintiffs are entitled to liberal construction of their pleadings. See Haines v. Kerner, 404 U.S. 519, 520–21 (requiring that allegations contained in a pro se complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), reh'g denied, 405 U.S. 948 (1972); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007); Hughes v. Rowe, 449 U.S. 5, 9–10 (1980); Estelle v. Gamble, 429 U.S. 97, 106 (1976), reh'g denied, 429 U.S. 1066 (1977); Matthews v. United States, 750 F.3d 1320, 1322 (Fed. Cir. 2014); Diamond v. United States, 115 Fed. Cl. 516, 524, aff'd, 2015 WL 527500 (Fed. Cir. Feb. 10, 2015). "However, '"[t]here is no duty on the part of the trial court to create a claim which [the plaintiff] has not spelled out in his [or her] pleading."'" Lengen v. United States, 100 Fed. Cl. 317, 328 (2011) (alterations in original) (quoting Scogin v. United States, 33 Fed. Cl. 285, 293 (1995) (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975))); see also Bussie v. United States, 96 Fed. Cl. 89, 94, aff'd, 443 F. App'x 542

---

[6] The court notes that defendant does not explain the basis for defendant's belief that plaintiff has failed to state a claim, and whether its failure to state a claim argument applies to all of plaintiff's allegations.

4

(Fed. Cir. 2011); Minehan v. United States, 75 Fed. Cl. 249, 253 (2007). "While a pro se plaintiff is held to a less stringent standard than that of a plaintiff represented by an attorney, the pro se plaintiff, nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." Riles v. United States, 93 Fed. Cl. 163, 165 (2010) (citing Hughes v. Rowe, 449 U.S. at 9 and Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir.) ("Plaintiff bears the burden of showing jurisdiction by a preponderance of the evidence."), reh'g and reh'g en banc denied (Fed. Cir. 2002)); see also Shelkofsky v. United States, No. 13-1016C, 2014 WL 5648973, at *4 (Fed. Cl. Nov. 4, 2014) ("[W]hile the court may excuse ambiguities in a pro se plaintiff's complaint, the court 'does not excuse [a complaint's] failures.'" (quoting Henke v. United States, 60 F.3d 795, 799 (Fed. Cir. 1995)); Harris v. United States, 113 Fed. Cl. 290, 292 (2013) ("Although plaintiff's pleadings are held to a less stringent standard, such leniency 'with respect to mere formalities does not relieve the burden to meet jurisdictional requirements.'" (quoting Minehan v. United States, 75 Fed. Cl. at 253)).

It is well established that "'subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.'" Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006) (quoting United States v. Cotton, 535 U.S. 625, 630 (2002)). "[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." Henderson ex rel. Henderson v. Shinseki, 131 S. Ct. 1197, 1202 (2011); see also Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010) ("Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." (citing Arbaugh v. Y & H Corp., 546 U.S at 514)); Special Devices, Inc. v. OEA, Inc., 269 F.3d 1340, 1342 (Fed. Cir. 2001) ("[A] court has a duty to inquire into its jurisdiction to hear and decide a case." (citing Johannsen v. Pay Less Drug Stores N.W., Inc., 918 F.2d 160, 161 (Fed. Cir. 1990))); View Eng'g, Inc. v. Robotic Vision Sys., Inc., 115 F.3d 962, 963 (Fed. Cir. 1997) ("[C]ourts must always look to their jurisdiction, whether the parties raise the issue or not."). "The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." Arbaugh v. Y & H Corp., 546 U.S. at 506; see also Cent. Pines Land Co., L.L.C. v. United States, 697 F.3d 1360, 1364 n.1 (Fed. Cir. 2012) ("An objection to a court's subject matter jurisdiction can be raised by any party or the court at any stage of litigation, including after trial and the entry of judgment." (citing Arbaugh v. Y & H Corp., 546 U.S. at 506)); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1346 (Fed. Cir. 2008) ("[A]ny party may challenge, or the court may raise sua sponte, subject matter jurisdiction at any time." (citing Arbaugh v. Y & H Corp., 546 U.S. at 506; Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. denied, 545 U.S. 1127 (2005); and Fanning, Phillips & Molnar v. West, 160 F.3d 717, 720 (Fed. Cir. 1998))); Pikulin v. United States, 97 Fed. Cl. 71, 76, appeal dismissed, 425 F. App'x 902 (Fed. Cir. 2011). In fact, "[s]ubject matter jurisdiction is an inquiry that this court must raise sua sponte, even where . . . neither party has raised this issue." Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings, 370 F.3d 1354, 1369 (Fed. Cir.) (citing Textile Prods., Inc. v. Mead Corp., 134 F.3d 1481, 1485 (Fed. Cir.), reh'g denied and en banc

suggestion declined (Fed. Cir.), cert. denied, 525 U.S. 826 (1998)), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. granted in part sub. nom Lab. Corp. of Am. Holdings v. Metabolite Labs., Inc., 546 U.S. 975 (2005), cert. dismissed as improvidently granted, 548 U.S. 124 (2006).

The Tucker Act grants jurisdiction to this court as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (2012). As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. See United States v. Navajo Nation, 556 U.S. 287, 289–90 (2009); United States v. Mitchell, 463 U.S. 206, 216 (1983); see also Greenlee Cnty., Ariz. v. United States, 487 F.3d 871, 875 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 552 U.S. 1142 (2008); Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999).

"Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States . . . ." United States v. Mitchell, 463 U.S. at 216; see also United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003); Smith v. United States, 709 F.3d 1114, 1116 (Fed. Cir.), cert. denied, 134 S. Ct. 259 (2013); RadioShack Corp. v. United States, 566 F.3d 1358, 1360 (Fed. Cir. 2009); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d at 1343 ("[P]laintiff must . . . identify a substantive source of law that creates the right to recovery of money damages against the United States."). In Ontario Power Generation, Inc. v. United States, the United States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is lodged in the United States Court of Federal Claims. The court wrote:

> The underlying monetary claims are of three types. . . . First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver. . . . Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." Eastport S.S. [Corp. v. United States, 178 Ct. Cl. 599, 605–06,] 372 F.2d [1002,] 1007–08 [(1967)] (describing illegal exaction claims as claims "in which 'the Government has the citizen's money in its pocket'"

(quoting Clapp v. United States, 127 Ct. Cl. 505, 117 F. Supp. 576, 580 (1954)) . . . . Third, the Court of Federal Claims has jurisdiction over those claims where "money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury." Eastport S.S., 372 F.2d at 7. Claims in this third category, where no payment has been made to the government, either directly or in effect, require that the "particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." Id.; see also Testan [v. United States], 424 U.S. [392,] 401–02 [1976] ("Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim-whether it be the Constitution, a statute, or a regulation-does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis 'in itself . . . can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" (quoting Eastport S.S., 372 F.2d at 1009)). This category is commonly referred to as claims brought under a "money-mandating" statute.

Ontario Power Generation, Inc. v. United States, 369 F.3d 1298, 1301 (Fed. Cir. 2004); see also Twp. of Saddle Brook v. United States, 104 Fed. Cl. 101, 106 (2012).

To prove that a statute or regulation is money-mandating, a plaintiff must demonstrate that an independent source of substantive law relied upon "can fairly be interpreted as mandating compensation by the Federal Government." United States v. Navajo Nation, 556 U.S. at 290 (quoting United States v. Testan, 424 U.S. 392, 400 (1976); see also United States v. White Mountain Apache Tribe, 537 U.S. at 472; United States v. Mitchell, 463 U.S. at 217; Blueport Co., LLC v. United States, 533 F.3d 1374, 1383 (Fed. Cir. 2008), cert. denied, 555 U.S. 1153 (2009). The source of law granting monetary relief must be distinct from the Tucker Act itself. See United States v. Navajo Nation, 556 U.S. at 290 (The Tucker Act does not create "substantive rights; [it is simply a] jurisdictional provision[] that operate[s] to waive sovereign immunity for claims premised on other sources of law (e.g., statutes or contracts)."). "If the statute is not money-mandating, the Court of Federal Claims lacks jurisdiction, and the dismissal should be for lack of subject matter jurisdiction.'" Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1308 (Fed. Cir. 2008) (quoting Greenlee Cnty., Ariz. v. United States, 487 F.3d at 876); Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (The absence of a money-mandating source is "fatal to the court's jurisdiction under the Tucker Act."); Peoples v. United States, 87 Fed. Cl. 553, 565–66 (2009).

When deciding a case based on a lack of subject matter jurisdiction or for failure to state a claim, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007) (citing Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508 n.1 (2002)))); Scheuer v.

7

Rhodes, 416 U.S. 232, 236 (1974) ("Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader."), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982), recognized by Davis v. Scherer, 468 U.S. 183, 190 (1984); United Pac. Ins. Co. v. United States, 464 F.3d 1325, 1327–28 (Fed. Cir. 2006); Samish Indian Nation v. United States, 419 F.3d 1355, 1364 (Fed. Cir. 2005); Boise Cascade Corp. v. United States, 296 F.3d 1339, 1343 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2002), cert. denied, 538 U.S. 906 (2003).

Copyright Infringement Claims

Section (b) of 28 U.S.C. § 1498 provides in part,

> whenever the copyright in any work protected under the copyright laws of the United States shall be infringed by the United States, by a corporation owned or controlled by the United States, or by a contractor, subcontractor, or any person, firm, or corporation acting for the Government and with the authorization or consent of the Government, the exclusive action which may be brought for such infringement shall be an action by the copyright owner against the United States in the Court of Federal Claims for the recovery of his reasonable and entire compensation as damages for such infringement.

28 U.S.C. § 1498(b) (2012).

Plaintiff alleges that two of his copyrighted works, "Feminica" and "A Line in the Sand," were adapted without his authorization, "from 2012-present in the form of a television show titled 'Veep' and registered with the U.S. Copyright Office in 2011 by Armando Iannucci and HBO, Inc." Defendant states that Mr. Norton's "claim of copyright infringement should be dismissed for lack of jurisdiction because this Court's jurisdiction is limited to claims of direct infringement by or for the United States, and not by private parties."

The United States Court of Federal Claims has specific jurisdiction in copyright cases only when the copyright owner brings an infringement action against the United States. 28 U.S.C. § 1498(b).[7] Section 1498(b) "codifies a limited waiver of sovereign

---

[7] All claims filed in the United States Court of Federal Claims must be filed against the United States as the defendant. See RCFC 10(a) (2014); see also 28 U.S.C. § 1491(a); United States v. Sherwood, 312 U.S. 584, 588 (1941) (citation omitted) ("[I]f the relief sought is against others than the United States the suit as to them must be ignored as beyond the jurisdiction of the court." (citation omitted)); Slattery v. United States, 635 F.3d 1298, 1321 n.1 (Fed. Cir. 2011) May v. United States, 80 Fed. Cl. 442, 444 ("Jurisdiction, then, is limited to suits against the United States."), aff'd, 293 F. App'x 775 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2008); Eskridge Research

8

immunity for copyright infringement claims against the government and establishes this court as the exclusive forum to hear such claims." Blueport Co., LLP, v. United States, 76 Fed. Cl. 702, 711 (2007), aff'd, 533 F.3d 1374 (Fed. Cir. 2008), cert. denied, 555 U.S. 1153 (2009); see also Gaylord v. United States, 678 F.3d 1339, 1340 (Fed. Cir. 2012); Aviation Software, Inc. v. United States, 101 Fed. Cl. 656, 662 (2011); Boyle v. United States, 44 Fed. Cl. 60, 62–63 (1999) ("[T]he exclusive action which may be brought for such infringement shall be an action by the copyright owner against the United States in the Court of Federal Claims." (quoting 28 U.S.C. § 1498(b))), aff'd, 200 F.3d 1369 (Fed. Cir. 2000).

Mr. Norton appears to allege that Mr. Iannucci and HBO, Inc. violated his copyrights of "Feminica" and "A Line in the Sand," and that the United States is responsible for these parties' actions. In his complaint plaintiff states: "While both the Copyright Office and USPTO allege to offer protection to individuals, a question of the Plaintiff is: on what scale as compared to corporations with other specified tax statuses? The Plaintiff observes a preference to corporations over individuals at both agencies." Plaintiff faults the United States and its "[f]ragmented jurisdictional entities [for] allowing this to happen." In its motion to dismiss, defendant notes that "Norton appears to believe that this lack of protection is rooted in the Government's purported preference towards corporations over individuals, and that the Government is being unjustly enriched by taxing the profits that HBO has allegedly made off of its copyright infringement." Defendant argues, however, "Section 1498, however, does 'not waive [the Government's] sovereign immunity for secondary liability based on infringement by unauthorized and independent third parties.'" (quoting Cohen v. United States, 98 Fed. Cl. 156, 170 (2011)) (brackets in original). As further explained by the Cohen court, "under its limited waiver of sovereign immunity, the United States may be held liable only for infringements by the government or by a third party acting for the government and with its authorization or consent." Cohen v. United States, 98 Fed. Cl. at 170 (citing 28 U.S.C. § 1498(b)); see also Boyle v. United States, 200 F.3d at 1373 ("Congress's intent clearly is to waive the government's sovereign immunity to suits for copyright infringement only when it infringes a copyright itself or authorizes or consents to infringement by a third party acting for it.").

Although plaintiff names the United States as the defendant, he has not set forth any facts to establish that United States, either directly or indirectly, infringed or authorized or consented to the infringement of any of his copyrights. See Boyle v. United States, 200 F.3d at 1373. Nor has he provided any evidence to that effect.

---

Corp. v. United States, 92 Fed. Cl. 88, 95 (2010) (citing Howard v. United States, 230 F. App'x 975, 976 (Fed. Cir.) ("The United States is the only proper defendant before the Court of Federal Claims."), reh'g denied (Fed. Cir. 2007)); Shalhoub v. United States, 75 Fed. Cl. 584, 585 (2007) ("When a plaintiff's complaint names private parties, or state agencies, rather than federal agencies, this court has no jurisdiction to hear those allegations."); Stephenson v. United States, 58 Fed. Cl. 186, 190 (2003) ("[T]he only proper defendant for any matter before this court is the United States, not its officers, nor any other individual.") (emphasis in original).

9

Moreover, there is no evidence that the United States has waived its sovereign immunity for secondary liability based on infringement by unauthorized and independent third parties. See Cohen v. United States, 98 Fed. Cl. at 170. Therefore, Mr. Norton has failed to establish this court's jurisdiction over his copyright infringement claim.

Patent Infringement Claim

Section (a) of 28 U.S.C. § 1498 provides in part:

Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture.

28 U.S.C. § 1498(a); see also Zoltek Corp. v. United States, 672 F.3d 1309, 1312 (Fed. Cir. 2012). Moreover, as a threshold matter, "[t]he Court of Federal Claims' exclusive jurisdiction pursuant to 28 U.S.C. § 1498 over patent infringement claims against the Federal Government is conditioned on the issuance of a patent . . . ." Stroughter v. United States, 89 Fed. Cl. 755, 761 (2010), appeal dismissed, 2010 WL 1687894 (Fed. Cir. Apr. 26, 2010). Section 1498 does not grant the Court of Federal Claims jurisdiction over a claim for alleged infringement of an unissued patent. See 28 U.S.C. § 1498(a) ("Whenever an invention described in and covered by a patent of the United States . . . ."); see also Martin v. United States, 99 Fed. Cl. 627, 632 (2011) ("section 1498 does not grant the Court of Federal Claims jurisdiction over a claim for alleged infringement of an unissued patent.") (citing Amgen, Inc. v. Genetics Inst., Inc., 98 F.3d 1328, 1332 (Fed. Cir. 1996) (explaining that a suit for infringement of a patent cannot be brought where a patent has not issued)). Moreover, the infringement must be "by or for the United States. See 28 U.S.C. § 1498(a). "As a waiver of sovereign immunity, section 1498 is strictly construed." Martin v. United States, 99 Fed. Cl. at 632 (citing Leesona Corp. v. United States, 220 Ct. Cl. 234, 599 F.2d 958, 968, cert. denied, 444 U.S. 991 (1979))

Mr. Norton states "[p]laintiff discovered 3 claims of the App had been implemented in Ohio by TeamNEO, Inc[.], who hired Atlas Advertising, Inc. of Colorado to do such partial implementation in 2010 after the Plaintiff's App was rejected by USPTO." Defendant argues that Mr. Norton's "claim of patent infringement should be dismissed for lack of jurisdiction because Norton abandoned his application before the PTO and was thus never issued a patent." Mr. Norton appears to allege that TeamNEO, Inc. and Atlas Advertising, Inc., violated his patent on the "App," which plaintiff alleges he filed with the USPTO for patent protection in 2006. In his complaint, however, plaintiff admits he was never issued a patent for this App. The USPTO's website lists plaintiff's application's status is "abandoned," which means his patent application is no

10

longer pending and, thus, cannot mature into registration.[8] The United States Patent and Trademark Office, Trademark Basics: Abandoned Applications, http://www.uspto.gov/trademarks/basics/abandon.jsp (last visited Mar. 9, 2015). Plaintiff also admits that TeamNEO, Inc. and Atlas Advertising, Inc.'s partial implementation of the "App" occurred after plaintiff's patent application was deemed abandoned. Since jurisdiction in this court is conditioned on the issuance of a patent, this court finds that plaintiff has failed to establish this court's subject matter jurisdiction over Mr. Norton's patent infringement claims. Moreover, even if Mr. Norton had perfected a patent on this "App," this court still would lack jurisdiction to hear his claims since he has not alleged any facts to establish liability on the part of the United States under 28 U.S.C. § 1498(a). Plaintiff has not set forth any facts that allege or establish that the United States, either directly or indirectly, infringed his patent. Plaintiff's patent infringement claims, if any, would be against TeamNEO, Inc. and/or Atlas Advertising, Inc. Therefore, this court finds that plaintiff has failed to establish this court's subject matter jurisdiction over his patent infringement claims.

Trademark Infringement Claim

Although unclear from the complaint, Mr. Norton also appears to allege that the law firm, Polsinelli Law, and World Capital Market, Inc. (WCM) violated his rights in "a Trademark (words and logo) titled 'Odysseus,'" by filing for trademark protection for the same in 2008, and by registering "Odysseus, Inc." in California in June 2013, respectively. Plaintiff's alleges that he "had used" this word and logo "as early as 2007 to promote the implementation of the App." Defendant states that Mr. Norton's "claim of trademark infringement should be dismissed for lack of jurisdiction because the Lanham Act places jurisdiction for trademark claims against the United States in the federal district and territorial courts."

Although the United States Court of Federal Claims has exclusive jurisdiction to hear copyright infringement suits against the federal government and its agents pursuant to 28 U.S.C. § 1498(b), this court does not have jurisdiction to hear claims of trademark or trade name infringement. See 28 U.S.C. § 1498. Jurisdiction over trademark infringement claims lies in the United States District Courts, not in this court. See 15 U.S.C. § 1121(a) (2012) ("The district and territorial courts of the United States shall have original jurisdiction and the courts of appeal of the United States (other than the United States Court of Appeals for the Federal Circuit) shall have appellate jurisdiction, of all actions arising under this chapter[9] . . . ."); Lockridge v. United States, 218 Ct. Cl. 687, 689 (1978) ("We therefore conclude that we have no jurisdiction over claims for trademark infringement."). Thus, because jurisdiction over trademark infringement claims lies in the United States District Courts, plaintiff's claims are not within the scope of this court's jurisdiction. Plaintiff also does not allege that the United

---

[8] Mr. Norton's other jurisdictional failures aside, the court notes that plaintiff cannot maintain a patent infringement claim for a patent which does not exist.

[9] This chapter refers to Chapter 22, "Trademarks," in Title 15 of the United States Code.

States violated any of his trademarks, nor does he set forth any facts to establish that the United States, either directly or indirectly, infringed his trademarks. Based on Mr. Norton's pleadings, plaintiff's trademark infringement claims, if any, appear to be solely against private third parties, not the United States.

Claims against the State of California

In his complaint, plaintiff appears to fault the United States for allowing the State of California to allow WCM to "steal[] Plaintiff's business identity" and for the State of California "den[ying] him Unemployment Insurance benefits." The United States Court of Federal Claims does not possess jurisdiction over claims asserted against states, municipalities, and local government entities. See Souders v. S.C. Pub. Serv. Auth., 497 F.3d 1303, 1308 (Fed. Cir. 2007) ("Claims founded on state law are also outside the scope of the limited jurisdiction of the Court of Federal Claims."); Hicks v. United States, 118 Fed. Cl. 76, 83 (2014); Woodson v. United States, 89 Fed. Cl. 640, 649 (2009) (citing Shalhoub v. United States, 75 Fed. Cl. at 585); Fiebelkorn v. United States, 76 Fed. Cl. 438, 440 (2007) ("The United States does not have plenary authority through this court to 'hold accountable this State of [California]."). Therefore, "to the extent that the plaintiff is bringing a claim against a defendant other than the United States, or an employee of the United States . . . the complaint must be dismissed pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction." Moore v. Pub. Defender's Office, 76 Fed. Cl. 617, 620 (2007). Because plaintiff's claims are against the State of California, and not against the United States, plaintiff has failed to establish that this court has jurisdiction over his claims.

In Forma Pauperis Application

Along with his pro se complaint, plaintiff submitted an Application to Proceed In Forma Pauperis, asserting that he is unable to pay the required filing fees, and requesting waiver of court costs and fees. His Application indicates that he is unemployed, and that for the past twelve months, he has not received any money from: business, profession, or other forms of self-employment; rent payments, interest or dividends; pensions, annuities or life insurance payments; gifts or inheritances; or from any other source. Plaintiff's also asserts in his application that he does not have any cash, savings or checking accounts, and does not own real estate, stock, bonds, automobiles or any other valuable property.

In order to provide access to this court to those who cannot pay the filing fees mandated by Rule 77.1(c) (2014) of the Rules of the United States Court of Federal Claims (RCFC), the statute at 28 U.S.C. § 1915 (2006) permits a court to allow plaintiffs to file a complaint without payment of fees or security, under specific circumstances. The standard in 28 U.S.C. § 1915(a)(1) for in forma pauperis eligibility is "unable to pay such fees or give security therefor." Determination of what constitutes "unable to pay" or unable to "give security therefor," and, therefore, whether to allow a plaintiff to proceed in forma pauperis is left to the discretion of the presiding judge, based on the information submitted by the plaintiff or plaintiffs. See, e.g., Rowland v. Cal. Men's

Colony, Unit II Men's Advisory Council, 506 U.S. 194, 217–18 (1993); Fuentes v. United States, 100 Fed. Cl. 85, 92 (2011). In Fiebelkorn v. United States, the United States Court of Federal Claims indicated:

> [T]he threshold for a motion to proceed in forma pauperis is not high: The statute requires that the applicant be "unable to pay such fees." 28 U.S.C. § 1915(a)(1). To be "unable to pay such fees" means that paying such fees would constitute a serious hardship on the plaintiff, not that such payment would render plaintiff destitute.

Fiebelkorn v. United States, 77 Fed. Cl. 59, 62 (2007); see also Hayes v. United States, 71 Fed. Cl. 366, 369 (2006). Although Mr. Norton's income level, and absence of savings appears otherwise to qualify him for in forma pauperis status, as discussed above, his complaint is being dismissed for lack of jurisdiction.

## CONCLUSION

For the foregoing reasons, the court **GRANTS** defendant's motion to dismiss. Plaintiff's complaint is **DISMISSED**, with prejudice. The Clerk of the Court shall enter **JUDGMENT** consistent with this Order.

IT IS SO ORDERED.

*[signature]*

MARIAN BLANK HORN
Judge